Filed 4/30/13  P. v. Bueno CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B235229 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA373550) |
| v. | |
| CARMELO MEZA BUENO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Norm J. Shapiro, Judge.  Affirmed.

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Carmelo Meza Bueno appeals his conviction for possession of methamphetamine for sale. The trial court sentenced Bueno to a term of 16 years 4 months in prison. Bueno contends the trial court committed various instructional errors; the prosecutor committed prejudicial misconduct during argument; the cumulative effect of the errors requires reversal; and the matter must be remanded to allow the trial court discretion to impose a lesser enhancement. Bueno also requests that we review the sealed transcripts of in camera hearings on his motions to suppress evidence, unseal a search warrant affidavit, traverse and quash the search warrant, and disclose the identity of a confidential informant. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

a. *People's evidence.*

On the evening of July 13, 2010, Long Beach police officers, including Detectives Mark Sisneros and Jose Serenil, served a search warrant at Bueno's one-bedroom apartment located on Henderson Avenue in Long Beach. Officers discovered 51 kilograms— or over 100 pounds—of methamphetamine in the bedroom, packaged in 114 different containers, including duffel bags, backpacks, boxes, and smaller containers. No drug paraphernalia, pay-owe sheets, or packing materials were found at the apartment.

Bueno told Detective Serenil that nine months earlier, he had met a man named Perico at a party. Perico offered to pay Bueno's rent if Bueno stored the methamphetamine for him. Perico explained that the drugs were of poor quality and could not be sold. An unnamed person dropped the drugs off at Bueno's apartment. During the subsequent nine months, Perico did not return to pick up the drugs, and Bueno never heard from Perico, or anyone else, regarding them. Bueno knew the quantity of methamphetamine he was storing was over 100 pounds.

Detective Sisneros, testifying as an expert, explained that drug-trafficking organizations generally operate as follows. The operation is controlled by someone in Mexico. Once the drugs are transported to the United States, one or more persons are

2

responsible for storing them at a "stash house" or warehouse, which could be a residence or other storage site. That individual is responsible for keeping the drugs safe, and he and his family would be in danger if anything happened to them. Other persons are responsible for finding buyers and keeping sales records. Once a buyer is found, the person storing the drugs will bring a specified amount to the seller, who will package it into smaller units. The money is stored separately. The participants in the organization generally do not know each other so that if one is caught, he or she cannot disclose the location of the drugs or the identities of the other participants. Inferior quality drugs that have been diluted or "cut" could still be sold, albeit for a lower price.

In Sisneros's opinion, the drugs stored at the apartment were possessed for sale. Generally, possession of two or more kilograms of methamphetamine would be for purposes of sale, regardless of the absence of other indicia of sales. The wholesale value of the methamphetamine in the apartment was at least $1.2 million. It did not appear to Sisneros that Bueno was personally selling the drugs.

b. *Defense evidence.*

Bueno testified in his own behalf, as follows. He had worked in construction for approximately eight years, but in early 2010 there was little work available. He could not pay his rent and had to borrow money from family and friends. In October 2009, he attended a party and met a man who called himself "El Perico." Perico did not reveal his real name. Upon learning Bueno was unemployed, Perico told Bueno he would give him $5,000 if he would store some methamphetamine for him. He said he would return for the drugs in less than four months. Perico explained that the drugs were " 'no good' " and he was " 'probably going to have to get rid of [them]' " and " 'dump [them] out.' " Perico did not explain why the drugs needed to be stored, rather than simply dumped. After thinking the proposition over, Bueno accepted Perico's offer. Bueno would not have agreed had he thought the drugs were to be sold. However, he did not know to a certainty that the drugs would not be sold. He had never used drugs, had never seen methamphetamine before, and had never previously been in trouble.

3

The following day Perico brought the methamphetamine to Bueno's apartment in a pickup truck. He and Bueno unloaded it into the apartment. Perico did not provide Bueno with his telephone number or contact information. Bueno never heard from Perico again, nor did he hear from anyone else regarding the drugs. Bueno did not dare get rid of the methamphetamine or call police because he feared for his and his family's safety. He never considered selling the methamphetamine himself. He had no financial interest in the drugs, beyond the money he was paid to store them, and did not intend that they be sold. He did not store them with the intent someone else would later sell them. However, he understood that if the drugs were good, Perico was probably involved in selling them.

Bueno's landlord, ex-wife, and brother testified that Bueno was an honest, hard working, law-abiding man who had suffered financial difficulties in the year preceding his arrest. He had never been in trouble before the charged offense.

2. *Procedure.*

Trial was by jury. Bueno was convicted of possession of methamphetamine for sale (Health & Saf. Code, § 11378). The jury found the amount possessed for sale exceeded 20 kilograms (Health & Saf. Code, § 11370.4, subd. (b)(4)). The trial court sentenced Bueno to a term of 16 years 4 months in prison. It imposed a restitution fine, a suspended parole restitution fine, a court security assessment, a criminal conviction assessment, and a laboratory analysis fee. Bueno appeals.

DISCUSSION

1. *The trial court correctly and adequately instructed on the elements of the offense.*

a. *Additional facts.*

The defense theory was that even if Bueno knew the methamphetamine he possessed would later be sold, he lacked the specific intent that it be sold and thus was only guilty of simple possession. Prior to trial, and at the close of evidence defense counsel requested that the court instruct that "[k]nowledge standing alone is not specific intent." The People proposed an alternative instruction stating that the defendant's

4

knowledge could be considered on the issue of whether he possessed the requisite specific intent.[1]  The trial court expressed concern that the proposed instructions might be confusing or unhelpful.  After considering lengthy argument on the issue, it determined to give only the standard instructions, CALJIC Nos. 12.01,  2.02, and 3.31.  CALJIC No. 12.01 listed, as one of the elements of the crime, that the defendant must have possessed the controlled substance "with the specific intent to sell the same."[2]  CALJIC No. 3.31 pertained to the concurrence of an act and specific intent,[3] and CALJIC No. 2.02 addressed the sufficiency of circumstantial evidence to prove specific intent.[4]  The jury was also instructed on the lesser included offense of simple possession.

---

[1]      The People's proposed instruction was as follows:  "If you find the defendant knew that someone else was going to sell the narcotics, then that is a fact that you can consider in conjunction with or along with whatever other evidence you consider to determine whether defendant had the specific intent necessary to be convicted of the charge of possession for sale of a controlled substance.  [¶]  However, the People must prove the defendant had the specific intent that the narcotics be sold."

[2]      The trial court instructed the jury with CALJIC No. 12.01 as follows:  "Defendant is accused in Count One of having committed the crime of illegal possession for sale of a controlled substance, a violation of section 11378 of the Health and Safety Code.  [¶] . . . . [¶]  In order to prove this crime, each of the following elements must be proved:  [¶]  1. A person exercised control over or the right to control, an amount of methamphetamine, a controlled substance; [¶] 2. That person knew of its presence; [¶] 3. That person knew of its nature as a controlled substance; [¶] 4. The substance was in an amount sufficient to be used for sale or consumption as a controlled substance; and [¶] 5. *That person [possessed] the controlled substance with the specific intent to sell the same.*"  (Italics added.)

[3]      CALJIC No. 3.31 informed the jury that for Bueno to be found guilty on count 1, "there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator.  Unless this specific intent exists the [crime] to which it relates [is not committed].  [¶]  [The specific intent required is included in the definition of the [crime] set forth elsewhere in these instructions.]"

[4]      The trial court instructed the jury with CALJIC No. 2.02 as follows:  "The specific intent with which an act is done may be shown by the circumstances surrounding the commission of the act.  However, you may not find the defendant guilty of the crime charged in Count One, unless the proved circumstances are not only (1) consistent with

5

During deliberations, the jury sent a note to the court asking for "a legal definition of 'intent to sell' and 'specific intent' " and adding, "we understand that it does not mean intending to sell the drugs on a street corner yourself." The court conferred with both counsel, but the parties were unable to reach a consensus on a proper response.

The court brought the jury into the courtroom. The foreperson stated that the jury had reached a verdict after submitting its question, explaining, "We found the answer in the instructions you gave us." The court advised that the jury's statement in its note, " 'we understand that it does not mean intending to sell the drugs on a street corner yourself' " was in fact incorrect, in that the defendant's intent to personally sell the drugs would suffice. The foreperson clarified that jurors had intended to convey "it doesn't mean that only." The court asked whether any juror did not understand the common meanings of the words "to sell," "specific," and "intent." No juror indicated confusion. The court told the jury to use the plain meaning of those words when interpreting the phrases "intent to sell" and "specific intent."

The foreperson stated that the court's response to the jury's query was "[a] little" helpful. She continued: "I think more helpful was the page that we found in the instructions. It was about when you do something with knowledge that it's illegal, like, you know, ignorance of the law is no excuse for your speeding through town at 60, you don't know the speed limit there is 45. You're still going to get a ticket even if you had no idea. . . . That part helped." The court corrected the foreperson, explaining that the cited instruction applied only to the lesser included offense of possession of methamphetamine, a *general intent* crime. The court explained: "You probably—you were dealing with a charged crime and you were dealing with an alternative. . . . Now,

---

the theory that the defendant had the required specific intent but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to any specific intent permits two reasonable interpretations, one of which points to the existence of the specific intent and the other to its absence, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the specific intent appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

6

the way I set the instructions up . . . we told you that [the] charged crime requires a specific intent to sell.  [¶]  In the lesser-included offense of possession, that's not a specific intent crime.  That's a general intent crime.  And what you are referring to is a general intent concept; in other words, if you do what the law declares to be a crime, although you are not aware, you are still acting with a general intent.  ¶]  Applying that to this charge would be incorrect.  In other words, you're judging this crime as a general intent crime as opposed to a specific intent crime.  [¶]  All right.  Now, does that set you back at all?"  The foreperson responded that the jury needed to "talk some more."

In regard to the jury's question about the definition of specific intent, the court added:  "On the element of specific intent, the person charged with the commission of the offense must possess the specific intent that someone else—this is an alternative—to the—your statement here that personally sell the drug on the street yourself is the alternative—must possess the specific intent that someone else would sell the controlled substance or attempt to sell the controlled substance."

Jurors resumed their deliberations, and rendered a verdict approximately one-half hour later.

b.  *Discussion.*

Bueno contends the trial court erred by providing inadequate instruction on the definition of specific intent, refusing to give the requested pinpoint instruction, and providing "unhelpful and potentially misleading" answers to the jury's questions, thereby violating his Sixth Amendment and due process rights to present a defense.  We disagree.

(i)  *The instructions given were correct and adequate.*

A trial court must instruct, sua sponte, on the general principles of law that are closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case.  (*People v. Moye* (2009) 47 Cal.4th 537, 548; *People v. Boyer* (2006) 38 Cal.4th 412, 468-469.)  We independently determine whether the instructions given were correct and adequate.  (*People  v. Riley* (2010) 185 Cal.App.4th 754, 767; *People v. Mathson* (2012) 210 Cal.App.4th 1297, 1311-1312.)  We examine whether the trial court fully and fairly instructed on the applicable law.  (*Riley*, at p. 767;

7

*People v. Lopez* (2011) 198 Cal.App.4th 698, 708.) When reviewing a purportedly ambiguous or misleading instruction, we inquire whether there is a reasonable likelihood the jury applied the challenged instruction in a way that violates the Constitution. (*People v. Richardson* (2008) 43 Cal.4th 959, 1028; *Lopez,* at p. 708.) We "look to the instructions as a whole and the entire record of the trial, including the arguments of counsel," and assume that the jurors are intelligent persons, capable of understanding and correlating the instructions given. (*Lopez*, at p. 708; *Riley*, at p. 767.) Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation. (*Riley*, at p. 767; *Lopez*, at p. 708.)

Health and Safety Code section 11378 states in pertinent part: "every person who possesses for sale any [enumerated] controlled substance . . . shall be punished by imprisonment." The elements of the crime are that the defendant possessed a controlled substance in a usable amount, with knowledge of its presence and nature as a controlled substance, with the intent to sell it. (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1175-1176; *People v. Parra* (1999) 70 Cal.App.4th 222, 225-226.) Section 11378 is a specific intent offense, and "the defendant needs to either (1) possess the specific intent to sell the controlled substance personally, or (2) possess the specific intent that someone else will sell the controlled substance." (*Parra,* at p. 227; *People v. Consuegra* (1994) 26 Cal.App.4th 1726, 1732, fn. 4 ["The requisite mental state is satisfied when the drugs are possessed with the specific intent that they be sold, regardless of whether the possessor intends to sell them personally"]; cf. *People v. Perez* (2005) 35 Cal.4th 1219, 1231.)[5] Mere knowledge that the drugs will ultimately be sold by someone else is not

_____

[5]    *Parra* and *Consuegra* considered Health and Safety Code section 11351 rather than Health and Safety Code section 11378. The two statutes contain identical language regarding possession for sale, but criminalize possession of different controlled substances. Accordingly, the analysis in *Parra* and *Consuegra* is equally applicable here.

An earlier case, *In re Christopher B.* (1990) 219 Cal.App.3d 455, has sometimes been interpreted to hold that to be found guilty of possession for sale the defendant must have specifically intended to sell the drugs himself or herself. (See *People v. Parra,*

8

equivalent to the specific intent to sell. (*Consuegra,* at p. 1732; *In re Christopher B., supra,* 219 Cal.App.3d at p. 466.) However, intent may—and generally is—proven by circumstantial evidence. (*People v. Thomas* (2011) 52 Cal.4th 336, 355 ["Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially"]; *People v. Harris* (2000) 83 Cal.App.4th 371, 374 [specific intent to sell contraband may be established by circumstantial evidence].) Thus, evidence a defendant knew drugs in his possession would eventually be sold is relevant on the issue of his specific intent. The parties agree on these principles.

The instructions given sufficiently apprised the jury of these precepts. CALJIC No. 12.01 expressly stated as an element that the defendant must have possessed the controlled substance "with the specific intent to sell the same." In response to the jury's question, the court explained that to be found guilty, Bueno must have either intended to sell the drugs himself, or "must [have] possess[ed] the specific intent that someone else would sell the controlled substance or attempt to sell the controlled substance." The arguments of both attorneys made it clear that the key issue was whether Bueno intended that the drugs be sold. Under these circumstances, the jury could not have been confused regarding the intent element. There is no reasonable likelihood the jury applied the instructions in a constitutionally impermissible fashion. (See *People v. Richardson, supra,* 43 Cal.4th at p. 1028.)

Bueno's contention that the instructions suffered from flaws similar to those present in *People v. Beeman* (1984) 35 Cal.3d 547, is meritless. *Beeman* concluded a pattern jury instruction was defective because it stated an aider and abettor was liable if

---

*supra,* 70 Cal.App.4th at p. 226.) *Christopher B.* did not directly consider the question of whether a defendant must have had the intent to *personally* intend to sell the drugs. (See *People v. Consuegra, supra,* 26 Cal.App.4th at p. 1732, fn. 4.) It is now settled that a defendant who possesses drugs may be guilty of possession for sale if he or she intends that someone else will sell them (*Parra,* at p. 227; *Consuegra,* at p. 1732, fn. 4; *People v. Perez, supra,* 35 Cal.4th at p. 1231), and the parties do not dispute this point.

9

he acted to aid or promote the crime with knowledge of the principal's unlawful purpose, but did not explain he must have shared the perpetrator's intent. (*Id*. at p. 560; *People v. Houston* (2012) 54 Cal.4th 1186, 1224.) Apart from the fact that Bueno was not tried as an aider and abettor, *Beeman* is inapposite because the instructions given in the instant matter expressly included an intent element.

Bueno also argues that the jury should have been provided with additional instruction regarding the meaning of "specific intent," and "intent to sell," both under the court's duty to sua sponte instruct on the relevant legal principles and in response to the jury's specific request for additional clarification. " 'A court has no sua sponte duty to define terms that are commonly understood by those familiar with the English language, but it does have a duty to define terms that have a technical meaning peculiar to the law.' " (*People v. Hoyos* (2007) 41 Cal.4th 872, 915; *People v. Brasure* (2008) 42 Cal.4th 1037, 1066.) As they arose in this case, "intent," "specific," and "sell" are all ordinary, commonplace words with readily understood meanings. Thus, the court had no sua sponte duty to define them.

Bueno's reliance on *People v. Williams* (2008) 161 Cal.App.4th 705, is likewise unavailing. In *Williams,* the defendant challenged CALCRIM No. 416, the uncharged conspiracy instruction, on the ground it failed to adequately set forth a specific intent requirement. (*Williams,* at p. 710.) In rejecting that contention, *Williams* observed: "In order to instruct a jury that a particular crime requires a specific intent, it is not helpful simply to say the defendant must have a specific intent. Rather, it is preferable that the jury be informed what particular intent is required." (*Id.* at p. 711.) *Williams* concluded CALCRIM No. 416 did so, in that it listed, for example, the "specific intent to enter an agreement with another member of the conspiracy to commit the unlawful sale or furnishing of a controlled substance." (*Ibid*.) *Williams* does not hold that a definition of the term "specific intent" is required. The instruction given here, as in *Williams,* appropriately told the jury what specific intent was required: the intent to sell the methamphetamine.

10

(ii) *Refusal to give pinpoint instruction.*

Upon request, a trial court must give an instruction that pinpoints the theory of the defense case, if supported by the evidence. (*People v . Gutierrez* (2002) 28 Cal.4th 1083, 1142; *People v. Bolden* (2002) 29 Cal.4th 515, 558; *People v. Moon* (2005) 37 Cal.4th 1, 30.) Such an instruction may properly be refused where it is, among other things, argumentative, duplicative or potentially confusing. (*People v . Homick* (2012) 55 Cal.4th 816, 890; *Moon,* at p. 30; *People v. Gurule* (2002) 28 Cal.4th 557, 659; *Bolden,* at p. 558.) Bueno contends the court committed prejudicial error by refusing his proposed pinpoint instruction, "[k]nowledge standing alone is not specific intent."

The instruction was a correct statement of law, and was not argumentative. However, the trial court appears to have been concerned that it was potentially confusing. There is some basis for the court's concern. A jury finding that Bueno knew the drugs would be sold could not substitute for a finding he had the requisite intent. It could, however, have supported a reasonable inference that Bueno had the specific intent that the methamphetamine be sold. (See *In re Christopher B., supra,* 219 Cal.App.3d at p. 466 [although juvenile court erred by characterizing possession for sale as a general intent crime, the record might have "circumstantially support[ed] a true finding of specific intent"].) The trial court may correctly have been concerned that the proposed instruction would lead the jury to erroneously conclude such an inference was impermissible.

But assuming arguendo the court should have given the requested instruction, reversal is not required. The erroneous failure to give a proposed pinpoint instruction generally requires reversal only if it is reasonably probable that the jury would have come to a different conclusion had the instruction been given. (*People v. Earp* (1999) 20 Cal.4th 826, 887; *People v. Hughes* (2002) 27 Cal.4th 287, 363; *People v. Larsen* (2012) 205 Cal.App.4th 810, 830; *People v. Canizalez* (2011) 197 Cal.App.4th 832, 858.)[6]

---

[6] Bueno argues that the *Chapman* harmless error standard applies because the trial court's instructions on mental state may have misled the jury. (*Chapman v. California*

11

No such probability exists here. The jury was properly instructed on the requirement of intent. Nothing in the instructions conflated knowledge with intent, or suggested they were fungible. The parties' arguments extensively addressed the issue, and did not suggest, explicitly or implicitly, that knowledge was the equivalent of intent. To the contrary, the parties' arguments repeatedly addressed the distinction between the two.[7] Nor is there merit to Bueno's contention that omission of the instruction deprived him of his right to present a defense. As noted, the instructions given clearly contained the intent element. Based on the instructions given, Bueno could and did defend on the theory that he lacked the requisite intent, and defense counsel's argument fully explored

---

(1967) 386 U.S. 18, 24.) Because the instructions given were not confusing, did not mislead the jury, did not deprive Bueno of a defense, and did not remove an element from the jury's consideration, the *Watson* standard applies. (*People v. Earp, supra,* 20 Cal.4th at p. 887; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

[7]    For example, the prosecutor argued: "Specific intent is an element that the People must prove. If you find the defendant did not have the specific intent, that he planned to just sit there and he had no intent that anything ever happen with these things other than hopefully somebody comes back and takes them, and he didn't really care, if you really believe that then you've got to find him not guilty. But again, that is not reasonable. It's not reasonable to say he had no intent, he did not have the specific intent that these drugs would be sold."

Defense counsel argued that Bueno's intent was the only question in the case. "[I]t is not enough that Mr. Bueno stored drugs. . . . You've got to focus on his intent. The prosecution has to prove to you beyond a reasonable doubt that was his purpose. Knowledge is not enough, period. Knowledge is not enough standing alone. If he knows someone is going to sell these drugs, not enough. [¶] It's not enough that he should have known those drugs were going to be sold. It's not enough that he might have actually known, and it's not enough that if—even if he did actually know these drugs are good, these drugs are going to be sold, even if Perico said I'll be back in five minutes, these drugs are very good quality, I'm going to go sell them later today, that knowledge is not enough. [¶] The prosecution has to prove specific intent. A different standard. Those are two different standards completely. The prosecution wants to collapse these two in telling you that knowledge, that's enough. He wants to turn an apple into an orange. Two different things. Focus here on the difference, knowledge, specific intent."

12

this theme.  (See *People v. Gutierrez, supra,* 28 Cal.4th at pp. 1144-1145 [if failure to give pinpoint instruction was error, it was harmless because nothing in the instructions given precluded jury from adopting the defense theory, which was fully covered in counsel's argument].)  Nothing in the jury's questions to the court suggested it was confused on the difference between knowledge and intent, or was equating the two.  Absent a showing the jury might have been confused on this point, we see no reason why omission of the instruction was prejudicial.  Jurors generally need not be told that apples are not oranges.  A reasonably intelligent jury can readily distinguish between the concepts of intent and knowledge.  Accordingly, any error in omitting the instruction was harmless.

(iii)  *The trial court's response to the jury's question was not error.*

Bueno next complains that the trial court's response to the jury's question was "unhelpful and confusing" and likely mislead the jury.

When a deliberating jury requests clarification of an instruction, Penal Code section 1138 requires that the court help the jury understand the legal principles it is asked to apply, and attempt to " 'clear up any instructional confusion.' " (*People v. Giardino* (2000) 82 Cal.App.4th 454, 465; *People v. Montero, supra,* 155 Cal.App.4th at p. 1179; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1015.)  " 'This does not mean the court must always elaborate on the standard instructions.  Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information.  [Citation.]  Indeed, comments diverging from the standard are often risky. [Citation.]" [Citation.]' " (*Montero*, at p. 1179; *Solis*, at p. 1015.)  The trial court must consider how it can best aid the jury and " 'whether further explanation is desirable, or whether it should merely reiterate the instructions already given.' " (*Giardino*, at p. 465.) Definition of a commonly used term may be required if the jury exhibits confusion over the term's meaning.  (*Solis*, at p. 1015; *Montero*, at p. 1179.)  We apply the abuse of discretion standard to any decision by a trial court to instruct, or not instruct, in its

13

exercise of its supervision over a deliberating jury. (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.)

We discern no abuse of discretion here. The court did not err by failing to provide a further definition of specific intent. The court ascertained that jurors understood the plain meaning of the words "specific," "intent," and "to sell," and instructed them to apply the plain meaning of the words. Although Bueno faults the court for referring jurors back to the instructions already given, in light of the fact the terms at issue could be easily and straightforwardly applied, this course of action was within the court's discretion. (See *People v. Montero, supra,* 155 Cal.App.4th at p. 1179; *People v. Giardino, supra,* 82 Cal.App.4th at p. 465.) As the jury did not ask about the interplay between knowledge and intent, answering the query with the proposed pinpoint instruction would have been unwarranted.

Nor do we agree that the court's comments likely misled or confused the jury. The court adequately cleared up the jury's confusion regarding CALJIC No. 3.30, and clarified that it applied only to the lesser included offense. There was nothing confusing in the advice that the intent element could be satisfied if Bueno "possess[ed] the specific intent that someone else would sell the controlled substance or attempt to sell the controlled substance." This accurate statement of the law would not "have given jurors the impression that the specific intent issue was to be resolved simply [by] reference to *who* was going to sell the drugs," as Bueno asserts.

Finally, Bueno complains that certain offhand comments made by the court somehow prejudiced him. In the course of responding to the jury's query, the trial court mentioned several times that the attorneys had been unable to agree on an appropriate instruction and response.[8] While the court's comments were unnecessary, they were

---

[8]    The challenged remarks are as follows: "So I believe it was after court on Friday when we were finalizing the instructions, we spent the bulk of our discussion talking about this. Each side had a suggestion. But, as good as these lawyers are and as well as they have cooperated with the court and as much as the court appreciated having them here and invited back together or on other cases in the future, they could not agree down

14

innocuous.  Bueno's theory that the comments likely led the jury to disregard defense counsel's argument or prejudiced the defense is not persuasive.

2. *The trial court's pretrial explanations of the reasonable doubt standard did not dilute the standard of proof or violate Bueno's due process rights.*

a. *Additional facts.*

During pre-instruction of the panel of prospective jurors, the trial court explained that in a criminal case, the prosecution must prove every element of a charged crime beyond a reasonable doubt.  The court elaborated on the meaning of reasonable doubt as follows:  "Now what's reasonable doubt?  It is not beyond a shadow of a doubt.  It's not beyond all doubt.  Those are standards we don't use here.  It's also more than I, think the defendant did this; and he might have done it; perhaps he did it; looks like he may have done it—things of that nature, that's not proof beyond a reasonable doubt."  The court then read a portion of CALJIC No. 2.90, the standard reasonable doubt instruction:  "Proof beyond a reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they have an abiding conviction of the truth of the charge."

The court continued:  "Okay.  That's a lot of words—must have an abiding conviction of the truth of the charge, be satisfied beyond a reasonable doubt.  If you do not have an abiding conviction of the truth of the charge, then the defendant is entitled to

---

the line as to what they would like me to tell you in addition to what the jury instructions said.  [¶]  So in the court's wisdom, that's in quotes, I told the attorneys I'm just going to give them the instruction the way it is written, as we do in most cases . . . ."  Shortly thereafter, the court continued:  "I'm going to go out on a limb here with you, folks. . . .  I spoke with the attorneys, as I said, at some length last week and at some length this morning, and there is—what I'd like to do before I go out and make a definite decision on something like this, if I get the sides to agree, it makes it—it's easier. . . .  But sometimes the sides just don't agree and so the judge, being the judge, has to step in and, as they say, lay down the . . . law.  I'm not doing it in that sense that I don't respect what both the attorneys have told me.  [¶]  So let me sum up my notes and see if I can give you something here that might be helpful."  "Okay.  Folks, what I'm going to give you now is the best I can do."  The court then provided the aforementioned response to the jury's query.

an acquittal or a finding of not guilty. [¶] . . . [¶] Now for those of you who are really thinking about this, what's an abiding conviction? To a certain degree, certainty, and other than to say—the attorneys may explain it to you—that you must be satisfied with your verdict, not only when you deliver the verdict to the court, but also when you think about the verdict the next day, the next week, the next month, the next year, five years, ten years down the line as you recall the case and be satisfied with the verdict that you have arrived at. [¶] That would be a lasting or abiding conviction of the truth of the charge."

The court then distinguished the preponderance of the evidence standard from the reasonable doubt standard, as follows: "Now if you sat on civil cases before, you know the standard is quite different. It's proof by a preponderance of the evidence. Now that's easily quantified. I put out my hands to represent a scale. Both sides come into court. At the end of the presentation of evidence, the side who tips the scale in their favor one way or the other is entitled to the verdict. So it could be a slightest tipping one way or the other. [¶] It's not the way it works in the criminal justice system, and it's something that can't be quantified 99 to one and so on. It's something that is a little bit—little bit more difficult than a simple tipping of a scale. [¶] So there you have it. That's the instruction." Defense counsel did not object to the court's explanations.

At the close of trial, the court instructed the jury with the standard version of CALJIC No. 2.90.

b. *Applicable law.*

Bueno contends the court's comments diluted the standard of proof and infringed upon his right to due process. We disagree.

California law imposes a duty on the trial court to instruct the jury in a criminal case on the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt. (*People v. Aranda* (2012) 55 Cal.4th 342, 352; Pen. Code, § 1096.) Instruction with CALJIC No. 2.90 or CALCRIM No. 220, the standard instructions on the presumption of innocence and reasonable doubt, correctly and adequately set forth the law and satisfy the court's obligation. (*Aranda*, at pp. 353-354;

16

*People v. Stone* (2008) 160 Cal.App.4th 323, 333-334.) Neither the federal Constitution nor state law prohibit trial courts from defining reasonable doubt, and there is no requirement that any particular form of words be used, as long as the concept is correctly conveyed to the jury. (*Victor v. Nebraska* (1994) 511 U.S. 1, 5; *Aranda,* at p. 354; *People v. Zepeda* (2008) 167 Cal.App.4th 25, 30.) However, appellate courts have sometimes warned of the perils of modifying or elaborating on the standard instructions. (See *People v. Freeman* (1994) 8 Cal.4th 450, 504-505; *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1471; *People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1269.) Where a court has misdefined the reasonable doubt standard in a manner that improperly lowers the prosecution's burden of proof, reversal is required. (*Aranda,* at p. 365.) An instruction that effectively lowers the prosecution's burden of proving guilt beyond a reasonable doubt is structural error because it vitiates all the jury's findings and its effect on the verdict is unquantifiable. (*Ibid.*)

As noted, when reviewing a challenge to jury instructions, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury applied the instruction in an unconstitutional manner. (*Victor v. Nebraska, supra,* 511 U.S. at p. 6; *People v. Loy* (2011) 52 Cal.4th 46, 74; *People v. Richardson, supra,* 43 Cal.4th at p. 1028; *People v. Stone, supra,* 160 Cal.App.4th at p. 331.)

c. *The court's comments on abiding conviction did not dilute the prosecution's burden of proof.*

Bueno complains that the trial court's comments on the meaning of "abiding conviction" lowered the prosecution's burden of proof because the court used the word "satisfied," a "much less demanding requirement than that they be convinced beyond all reasonable doubt." We do not believe jurors would have understood the court's comments as Bueno suggests. To the contrary, the court appropriately equated the phrase "abiding conviction" with permanence. As *People v. Pierce* (2009) 172 Cal.App.4th 567, explained: "The United States Supreme Court and the California Supreme Court, respectively, have described 'an abiding conviction' as one that is 'settled and fixed' (*Hopt v. Utah* (1887) 120 U.S. 430, 439) and one that is 'lasting [and] permanent'

(*People v. Brigham* (1979) 25 Cal.3d 283, 290.)" (*Pierce*, at p. 573.) Bueno does not offer persuasive authority for the proposition that the word "satisfied" lessened the prosecution's burden. Indeed, as the People point out, over a century ago *Hopt* observed that "an instruction to the jury that they should be satisfied of the defendant's guilt beyond a reasonable doubt, had often been held sufficient, without further explanation." (*Hopt v. Utah, supra,* 120 U.S. at p. 440.) Moreover, the court subsequently instructed with CALJIC No. 2.90, the standard reasonable doubt instruction, which defined the term. Considering the instructions as a whole, we see no likelihood the jury would have interpreted the court's comments as Bueno suggests.

d. *The court's comparison of the reasonable doubt and preponderance of the evidence standards did not dilute the burden of proof.*

Bueno complains that the court's comments comparing the preponderance of the evidence and reasonable doubt standards could have been misinterpreted to mean that proving guilt beyond a reasonable doubt was only a little more difficult than a simple tipping of a scale. The proper inquiry, however, is not whether the court's comments " 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply" them. (*Victor v. Nebraska, supra,* 511 U.S. at p. 6.)

The trial court first told jurors that in a civil case, the preponderance of the evidence standard was simple to quantify, and used the analogy of a scale to illustrate the point. The court then told jurors the standards in civil and criminal cases were "quite different." When the court commented, "It's not the way it works in the criminal justice system, and it's something that can't be quantified 99 to one and so on. It's something that is a little bit—little bit more difficult than a simple tipping of a scale," its point was that *describing* the reasonable doubt standard was more difficult than the scale analogy it had just provided. Given that the court had just read a portion of CALJIC No. 2.90, and had just informed the jury that the two standards were distinct, there is no reasonable likelihood any juror would have assumed the court meant the reasonable doubt standard

18

was only a "little bit" more difficult to meet than the preponderance standard. There was no error.

3. *The prosecutor did not commit prejudicial misconduct.*

Bueno next contends that four comments made by the prosecutor during closing argument were improper requests that the jury consider punishment. He asserts that the improper argument violated state law and infringed upon his federal due process rights.

a. *Additional facts.*

During argument, the prosecutor stated the following: "Please don't sit there—it would be the People's request that you don't say, you know what, we feel bad for him. He said how hard up he was financially and so we're going to kind of split the baby and say, well, he possessed it, he admitted he possessed it, let's just find no possession for sale because we feel bad for him. [¶] First of all, you can't consider sympathy, punishment, anything like that. The court told you that. *Secondly, if you do that the entire 50 plus kilos, that charge, that allegation goes away. It's just the same as if he possessed an ounce, so please don't just go, oh, it's simple possession.* To do that, you have got to disregard all the evidence that he did not possess it with the intent that it be sold." (Italics added.) Defense counsel did not object.

The prosecutor then argued that Bueno's account of events was not believable and that his intent was shown by circumstantial evidence. After analogizing Bueno's conduct to that of a cook who fries hamburgers intending that they be sold, the prosecutor stated: "*If you believe for a moment that he didn't have the specific intent, then you are allowing a man who was engaging in the commerce of a drug trafficking organization, you're letting him go.*" (Italics added.) Defense counsel objected that the remarks were "improper argument." The trial court responded that "the argument must be within the evidence and logical extensions from the evidence. I don't know that I necessarily agree with [defense counsel] that it's improper or if it's the argument I would make if I was the prosecutor in [the] matter, I'm just going to instruct you, your job is to make a determination of the charge that has been proven to you beyond a reasonable doubt, and if so, is the allegation true beyond a reasonable doubt. If not, you can consider the lesser

19

related offense, and if you're not satisfied that that's been proven beyond a reasonable doubt, you can choose to acquit the defendant on the charged offenses. That's up to you based on your determination of the evidence. But public opinion, passion, sympathy, prejudice, all the other things I mentioned, none of those things should affect your judgment. Just the evidence and your judgment on the evidence."

The prosecutor continued: "That is all I'm asking you to do, is hold the defendant accountable for what he did based on the evidence presented. [¶] The evidence from Detective Sisneros was that this is how it's broken down. A person brings it across, a person stores it, a person brings it down and a person sells it. *The defendant was doing his part, and if you go for the straight possession then the 50 kilos, good-bye. It's as if there was no difference between that and a couple of grams*." (Italics added.) Defense counsel objected that the argument was "improper." The trial court stated: "I don't know that it's necessarily improper, but we're dealing with the amount we're dealing with, ladies and gentlemen, and the one thing you have to keep in mind, whether it's a small amount or a large amount, the allegation is possession for sale. A small amount could be possessed for the purpose of sale, a large amount can be possessed for personal use. [¶] I'm saying that's the possibility. You're to make a determination based on what's been proven in this case and be satisfied beyond a reasonable doubt with whatever decision you make."

The prosecutor continued: "*Look at the verdict forms. The verdict form for guilty does not have a weight enhancement allegation*." (Italics added.) Defense counsel did not object to this comment.

b. *Discussion.*

" ' "The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or

20

reprehensible methods to attempt to persuade either the court or the jury.' " '
[Citation.]" ' " (*People v. Carter* (2005) 36 Cal.4th 1215, 1263; *People v. Vines* (2011)
51 Cal.4th 830, 873; *People v. Redd* (2010) 48 Cal.4th 691, 733-734.)  " 'To prevail on a
claim of prosecutorial misconduct based on remarks to the jury, the defendant must show
a reasonable likelihood the jury understood or applied the complained-of comments in an
improper or erroneous manner.' " (*People v. Brown* (2003) 31 Cal.4th 518, 553; *Carter,*
at p. 1263.)  We must place the challenged statements in context and view the argument
as a whole.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1203.)

A prosecutor is given wide latitude during argument.  The argument may be
vigorous as long as it amounts to fair comment on the evidence, which can include
reasonable inferences and deductions to be drawn therefrom.  (*People v. Thomas* (2012)
53 Cal.4th 771, 822; *People v. Ward* (2005) 36 Cal.4th 186, 215.)  It is improper for a
prosecutor to reference punishment during trial.  (*People v. Thomas* (2011) 51 Cal.4th
449, 486.)  A defendant's possible punishment is not a proper matter for jury
consideration, and the jury " ' "is not allowed to weigh the possibility of parole or pardon
in determining the guilt of the defendant . . . ." [Citation.]' " (*Ibid.*)

Bueno forfeited his challenges to the prosecutor's first and fourth cited remarks
because he failed to object below or request that the jury be admonished not to consider
punishment.  When the defense fails to object to asserted prosecutorial misconduct and
request that the jury be admonished, the claim ordinarily is forfeited on appeal.  (*People
v. McKinzie* (2012) 54 Cal.4th 1302, 1358; *People v. Souza* (2012) 54 Cal.4th 90, 122.)
Bueno asserts that an objection to the prosecutor's first and fourth comments would have
been futile, because when he objected to the prosecutor's second and third comments, the
court did not agree the argument was improper and did not admonish the jury not to
consider punishment.  But Bueno cannot now complain that the trial court failed to
properly admonish the jury not to consider penalty or punishment immediately after the
challenged remarks.  While he objected to the second and third comments on the ground
of "improper argument," he never specified that the argument improperly referenced
punishment, nor did he request that the jury be admonished not to consider punishment.

21

Had he done so, the court would likely have addressed the issue with the prosecutor, stricken any objectionable comments, and immediately admonished the jury on the prohibition on considering penalty or punishment. Thus Bueno has failed to demonstrate an objection and request for admonishment would have been futile. (See generally *People v. Redd, supra,* 48 Cal.4th at p. 745.)

But apart from the issue of waiver, Bueno's claims fail on the merits. In Bueno's view, the comments that if the jury convicted him of simple possession, it would be "letting him go" and the 50-kilo enhancement would "go[] away" can only be interpreted as improper requests that the jury consider punishment. He points out that a jury is not to consider an enhancement allegation before it has determined guilt. The People, on the other hand, argue that the prosecutor's comments, read in context, "are more reasonably interpreted as requests for the jury to avoid rendering a verdict based on sympathy and to base its decision on the evidence, i.e., the intent shown by the very large quantity of methamphetamine."

Turning first to the prosecutor's second challenged comment—"[i]f you believe for a moment that he didn't have the specific intent, then you are allowing a man who was engaging in the commerce of a drug trafficking organization, you're letting him go"—we discern no impropriety. While the prosecutor's comment was somewhat inarticulate, in context, jurors would have understood he was simply asking them to hold Bueno accountable for his conduct. There was nothing objectionable about that argument, which was based on the evidence. (See generally *People v. Thomas* (2012) 54 Cal.4th 908, 946; *People v. Loker* (2008) 44 Cal.4th 691, 741-742.) Reasonable jurors would not have understood the "you're letting him go" statement as a reference to punishment, but as a reference to accountability. The prosecutor did not reference probation, prison, or a potential sentence, and we do " ' "not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Brown, supra,* 31 Cal.4th at pp. 553-554.)

The prosecutor's first and third challenged comments were unobjectionable to the extent the prosecutor urged jurors not to be swayed by sympathy and not to disregard

22

evidence of the large amount of methamphetamine found. The thrust of the argument was that if the jury made a decision based on sympathy it would be ignoring the fact that the very large quantity of methamphetamine strongly demonstrated an intent to sell.

However, the statements that if the jury found Bueno guilty of simple possession, "the entire 50 plus kilos, that charge, that allegation goes away," the prosecutor's later comment that "if you go for the straight possession then the 50 kilos, good-bye," and the reference to the verdict forms, are more problematic. *People v. Stevens* (2007) 41 Cal.4th 182, is instructive. There, during argument the prosecutor attempted to prevent the jury from returning second degree, as opposed to first degree, murder verdicts. The prosecutor urged, " 'What happens if they're second degree murders? You can never find [the defendant] guilty of the special circumstance. And they save his life . . . .' " (*Id.* at p. 205.) Following a defense objection, the trial court directed the jury not to consider the comment. The court subsequently instructed the jury not to consider penalty or punishment in its deliberations. *Stevens* concluded there was no reasonable likelihood the remark misled the jury as to whether it could consider punishment in its guilt deliberations. (*Id.* at p. 205.) Arguments of counsel " 'generally carry less weight with a jury than do instructions from the court.' " (*Ibid.*) Moreover, after argument the jury was instructed that penalty or punishment could not be discussed or considered, and the court presumed the jury followed that instruction. (*Id.* at p. 206.)

Similar to the argument in *Stevens,* the prosecutor here improperly referenced the fact that if the jury found Bueno guilty of the lesser included offense, it could not find the quantity enhancement true. However, this misstep was far less egregious than that in *Stevens*: the prosecutor here did not directly reference punishment, and did not state that Bueno would be subject to a lesser sentence. Viewed in context, the thrust of the argument was that Bueno should be held accountable for the very large quantity which he admittedly possessed. Under these circumstances, there was no reasonable likelihood the prosecutor's remarks misled the jury as to whether it could consider punishment in its guilt deliberations. The challenged statements were brief and but a small part of the case. They cannot fairly be characterized as deceptive or reprehensible, nor do we detect a

23

pattern of egregious conduct that might have infected the trial with unfairness. Moreover, as in *Stevens*, Bueno's jury was instructed that the arguments of counsel are not evidence, and that it must decide the case based on the evidence at trial. The jury was also instructed, prior to argument and in the written instructions, that it was not to discuss or consider the subject of penalty or punishment, and "[t]hat subject must not in any way affect your verdict." We presume the jury followed these instructions. (*People v. Stevens, supra,* 41 Cal.4th at p. 206; *People v. Thomas, supra,* 51 Cal.4th at p. 487.) The prosecutor also reiterated during argument that the jury should not consider punishment.

Bueno relies upon *People v. Holt* (1984) 37 Cal.3d 436, in support of his contention. In *Holt,* the prosecutor argued during closing that if the jury found the defendant guilty of first degree murder " 'based on a burglary theory, then you cannot conclude that the murder occurred during a robbery and if you cannot conclude that it occurred during a robbery, you've just guaranteed [the defendant] a parole date.' " (*Id.* at p. 457, fn. 14, italics omitted.) *Holt* found the reference to punishment was improper. (*Id.* at p. 458.) The court observed that an immediate admonishment that the jury could not consider penalty or punishment might have "had a curative effect," but none was given. (*Ibid.*) An instruction not to consider penalty or punishment given at the conclusion of the guilt phase was insufficient to negate the prosecutor's earlier, improper reference to punishment. (*Ibid.*) Bueno argues that, as in *Holt*, his jury was not immediately admonished that it could not consider penalty or punishment.

We are not persuaded. First, the misconduct in *Holt*—comments that a particular verdict would guarantee the defendant a parole date, a direct reference to punishment— was more serious than the comments at issue here. (*People v. Holt, supra,* 37 Cal.3d at p. 457; see also *People v. Thomas, supra,* 51 Cal.4th at pp. 486-487 [prosecutor's argument that defendant could be released on parole if jury did not find special circumstances allegation true was improper but harmless].) The prosecutor's argument in the instant case was far more oblique and did not directly reference punishment. Indeed, it appears the trial court did not admonish the jury on the point because it did not understand the argument to be a reference to punishment. It would be anomalous to

assume the jury drew the most damaging rather than the least damaging meaning under these circumstances. (See *People v. Brown, supra,* 31 Cal.4th at pp. 553-554.) Second, as we have explained, the court's failure to give a more specific admonishment regarding punishment was due to defense counsel's failure to request one. A criminal defendant is excused from the failure to timely object and request an admonition only if doing so would have been futile or an admonition would not have cured the harm. (*People v. Clark* (2011) 52 Cal.4th 856, 960.) As *Holt* explained, an admonition might have cured any harm arising from an improper mention of punishment during argument; the same is true here. Third, *Stevens* suggests that the standard instruction forbidding the jury from considering penalty or punishment may have a curative effect regardless of when given. There, unlike in *Holt,* the jury was told to disregard the objectionable comment but was not immediately admonished that it must refrain from considering penalty or punishment. The court nonetheless presumed jurors followed the subsequent instruction not to consider penalty or punishment. (*People v. Stevens, supra,* 41 Cal.4th at p. 206.) Finally, "the *Holt* court did not find prejudice based solely on the prosecutor's argument. Rather, it reversed for cumulative prejudice" based on eight separate errors, including the objectionable argument, the erroneous admission of evidence, and improper impeachment. (*Stevens,* at pp. 205-206; *Holt,* at p. 458.) In sum, there was no reasonable likelihood the prosecutor's remarks misled the jury as to whether it could consider punishment in its guilt deliberations. No violation of state law or of Bueno's due process rights is apparent.

        4. *Cumulative error.*

        Bueno contends that the cumulative effect of the purported errors infringed upon his Sixth Amendment and due process rights, and constituted error under state law. As we have " 'either rejected on the merits defendant's claims of error or have found any assumed errors to be nonprejudicial,' " we reach the same conclusion with respect to the cumulative effect of any purported errors. (*People v. Cole*, *supra,* 33 Cal.4th at pp. 1235-1236; *People v. Butler* (2009) 46 Cal.4th 847, 885.)

5. *Health and Safety Code section 11370.4 enhancement.*

The jury found Bueno possessed for the purpose of sale an amount in excess of 20 kilograms of a substance containing methamphetamine within the meaning of Health and Safety Code section 11370.4, subdivision (b)(4).  Pursuant to that statute, the trial court imposed a sentence enhancement of 15 years, applicable when the substance possessed exceeds 20 kilograms.  (*Ibid.*)

Bueno argues that the trial court "made it clear it would have imposed" a shorter term applicable to a lesser quantity had it had the authority to do so.  Bueno acknowledges that the trial court was bound by several appellate decisions—including one from this court—holding that a trial court may strike or impose a section 11370.4 enhancement, but may not substitute a shorter term applicable to a lesser weight.  He urges, however, that these cases were wrongly decided and the matter should be remanded to allow the trial court to exercise its discretion to impose a lesser term.  Assuming arguendo Bueno is correct that the trial court indicated willingness to reduce the enhancement, his contention nonetheless lacks merit.

Health and Safety Code section 11370.4, subdivision (b), provides in pertinent part:  "(b) Any person convicted of a violation of, or of conspiracy to violate, Section 11378, 11378.5, 11379, or 11379.5 with respect to a substance containing methamphetamine, . . . shall receive an additional term as follows:  [¶]  (1) Where the substance exceeds one kilogram by weight, or 30 liters by liquid volume, the person shall receive an additional term of three years.  [¶]  (2) Where the substance exceeds four kilograms by weight, or 100 liters by liquid volume, the person shall receive an additional term of five years.  [¶]  (3) Where the substance exceeds 10 kilograms by weight, or 200 liters by liquid volume, the person shall receive an additional term of 10 years.  [¶] (4) Where the substance exceeds 20 kilograms by weight, or 400 liters by liquid volume, the person shall receive an additional term of 15 years."  Subdivision (e) of the statute provides:  "Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in this section if it determines that

there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment."

*People v. Harvey* (1991) 233 Cal.App.3d 1206, explained: "Health and Safety Code section 11370.4, subdivision (a) makes it clear the court *shall* impose the additional term of 15 years if the allegation is proven. Subdivision (e) is the escape clause and indicates the court may strike the enhancement if it determines there are circumstances in mitigation. The wording of the section makes it clear that the sentencing court has only two alternatives. If the court does not feel there are mitigating circumstances sufficient to justify the striking of the enhancement, it must impose the enhancement. Otherwise, if it finds that mitigating circumstances do exist which would justify striking the enhancement, it may be stricken. Nowhere does the section indicate the court may impose only a portion of the enhancement. In interpreting the statute, the Legislature is presumed to have meant what it said, and the plain meaning of the language governs. [Citation.] Nowhere in the statute does it indicate the court has any discretion besides either imposing the full enhancement or striking it in its entirety." (*Id.* at pp. 1229-1230.)

We reached the same conclusion in *People v. Ruiz* (1992) 3 Cal.App.4th 1251. Based on the statutory language, we held: "it is manifestly clear that the court has the power pursuant to subdivision (e) to strike the additional term enhancements of subdivisions (a)(1) through (a)(4) of section 11370.4. It is equally clear, however, that the court does not have the power to substitute one of the term enhancements for another, e.g., the five-year additional term under subdivision (a)(2) for the fifteen-year additional term under subdivision (a)(4)." (*Ruiz*, at p. 1255.) We observed that our Supreme Court stated in *People v. Pieters* (1991) 52 Cal.3d 894, at page 901: " 'The Legislature added section 11370.4 to punish dealers of large amounts of drugs in direct proportion to the quantity of drugs involved. This intent is evidenced by both the express purpose of the section and the graduated sentence enhancements provided therein.' [Citation.] [*Pieters*] further noted that such intent would be defeated if 'those defendants possessing more than 25 pounds of a controlled substance would be punished the same as those with 10 pounds.' " (*Ruiz,* at p. 1255.) Accordingly, we concluded "the additional term

27

enhancements under subdivisions (a)(1) through (a)(4) of section 11370.4 are not interchangeable," and a trial court lacks discretion to substitute a lesser term under a different subdivision. (*Ruiz*, at p. 1255.) Subsequently, *People v. Arango* (1993) 12 Cal.App.4th 450, 455 to 456, came to the same conclusion.

The reasoning in the foregoing cases is directly applicable to subdivision (b) of the statute, which contains the same language as subdivision (a), but deals with different controlled substances. The trial court therefore lacked discretion to substitute a term applicable to a finding of possession of a lesser quantity.

We decline Bueno's invitation to revisit *Ruiz*. Bueno cites no authority directly holding that *Ruiz*, *Harvey*, and *Arango* were wrongly decided, and we know of none. We remain convinced these cases correctly state the law. Contrary to Bueno's assertions, we do not view our reliance on *Pieters* as misplaced. Bueno's contention that the legislative purpose behind section 11370.4 would be better served by a contrary interpretation is unavailing: such a change would be a matter for the Legislature, not this court. Remand is not required.

6. *Review of in camera hearings.*

Prior to trial, Bueno moved to suppress evidence under Penal Code section 1538.5, to unseal the search warrant affidavit, and to quash and traverse the search warrant. He also moved for discovery of a confidential informant's identity under *Brady v. Maryland* (1963) 373 U.S. 83.

The trial court held two in camera hearings, one on February 24, 2011 and one on April 25, 2011, and denied the motions. It ordered two paragraphs of the search warrant affidavit unsealed, and ordered that the remainder remain sealed. The court found the warrant affidavit did not appear to contain material misstatements; the warrant was supported by probable cause; and there was no reasonable possibility that nondisclosure of the confidential informant's identity would deprive Bueno of a fair trial.

Bueno requests that we conduct an independent review of the in camera hearings to determine whether the trial court followed the appropriate procedures under *People v.*

28

*Hobbs* (1994) 7 Cal.4th 948, and whether it erred by denying his motions. The People agree that review is permissible.

As Bueno requests, we have independently reviewed the transcripts of the in camera hearings, as well as the sealed and public portions of the warrant affidavit. We conclude that the trial court correctly followed the procedures set forth in *Hobbs.* Valid grounds existed for maintaining the informant's confidentiality, and neither *Brady* nor *Hobbs* required disclosure. (See *People v. Hobbs, supra,* 7 Cal.4th 948; *Brady v. Maryland, supra,* 373 U.S. 83.) Disclosure of the sealed portions of the affidavit would have revealed or tended to reveal the informant's identity, and therefore sealing was proper. (*Hobbs,* at p. 972; *People v. Martinez* (2005) 132 Cal.App.4th 233, 241-242.) Viewing the totality of the circumstances, the affidavit, including the sealed portion, established a fair probability that evidence of a crime or contraband would be found at the apartment, and probable cause thus existed to support issuance of the warrant. (*Hobbs*, at p. 975; *People v. Galland* (2008) 45 Cal.4th 354, 364.) Nothing suggests that the warrant affidavit contained material misrepresentations or omissions. Accordingly, the trial court's denial of the motions to unseal and quash the warrant, and suppress evidence, were proper. (See, e.g., *Martinez*, at p. 241.)

DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.